Filed 8/7/25  Pelayo v. Utility Partners of America CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DAVID PELAYO et al.<br><br>        Plaintiffs and Respondents,<br><br>v.<br><br>UTILITY PARTNERS OF AMERICA, LLC.<br><br>        Defendant and Appellant. | A171211<br><br><br>(Sonoma County<br>Super. Ct. No. SCV264530) |

Utility Partners of America, LLC (UPA) appeals from an order granting David Pelayo, Roberto Hernandez, Edmond Andre, Bryan Munoz, and Brian Medeiros (collectively Plaintiffs) $1,767,649.50 in attorney fees and costs after the parties settled a prevailing wage action.  We affirm.

## I.    BACKGROUND

The City of Santa Rosa (the City) hired UPA as a contractor for a public works project to replace or retrofit existing water meters with "smart" meters that could be read remotely.  The contract between the City and UPA provided that UPA would pay its employees the appropriate prevailing wage for work done on the project.  Plaintiffs, who were employed by UPA to work on the project, alleged they were paid less than the prevailing wage.  Plaintiffs filed formal Stop Notices with the City but UPA asserted it had

1

complied with its agreement with the City and with California's prevailing wage law.[1]  Plaintiffs then filed an action against the City and UPA, asserting various violations of the Labor Code.

After engaging in extensive litigation, which included contentious discovery proceedings, motions for summary judgment and adjudication, and multiple global mediations, Plaintiffs first settled with the City and then with UPA a few days before trial was set to begin.  Plaintiffs and UPA's settlement agreement provided that Plaintiffs would be entitled to statutory attorney fees and costs in an amount to be determined by the trial court.

Plaintiffs filed a motion seeking $2,401,622 in attorney fees based on 2,403.63 hours of work spent by their counsel on the litigation.  They also submitted a declaration by Richard Pearl, the author of a leading practice guide on California attorney fees, who attested to the reasonableness of their fee request.  Plaintiffs requested that fees be granted at their counsels' rates of approximately $500 to $800, which they contended was reasonable in both Los Angeles County where their counsel was based and in Sonoma County where the case was litigated.  Lastly, Plaintiffs requested a 1.5 multiplier on the lodestar, asserting this reflected the fair market value of their counsels' services.

In opposition, UPA argued Plaintiffs were not entitled to Los Angeles County attorney billing rates because they failed to demonstrate they made a good faith effort to find local Sonoma County counsel.  Instead, UPA proposed hourly rates of $250 to $375.  UPA also argued no multiplier should be applied and Plaintiffs' lodestar should be halved because multiple billers

---

[1] A "stop notice" is a lien placed on the earnings of a contractor with a public agency.  (Civ. Code, § 9350, et seq.)

billed for the same work, Plaintiffs' counsel purportedly used "shell pleadings," and Plaintiffs' counsel billed for administrative tasks. UPA requested that the attorney fees be reduced to $302,401.31.

The trial court conducted a hearing and issued its order shortly thereafter. The court did not award Los Angeles County billing rates but instead set the rates at $400 to $600 per hour because Plaintiffs failed to demonstrate their attempts to find local counsel were unsuccessful. The court, however, declined UPA's request to reduce the number of hours billed stating it was "familiar enough with th[e] litigation to appreciate the extensive amount of work that was placed by counsel in this matter" which included "extensive discovery motion, dispositive motion, and pre-trial work" conducted over five years of litigation. The court also granted Plaintiffs' request for a 1.5 multiplier on the lodestar and awarded costs.

This appeal by UPA followed.[2]

## II.    DISCUSSION

UPA argues the trial court abused its discretion in awarding billing rates from outside of Sonoma County, not reducing the hours billed by Plaintiffs' counsel, and applying a 1.5 multiplier to the lodestar.[3] We affirm.

---

[2] UPA appeals only the portion of the order awarding attorney fees and not the trial court's award of costs.

[3] Plaintiffs respond to these arguments but also argue in passing at the end of their brief that UPA's failure to provide a transcript of the fee motion proceeding is fatal to the appeal. We disagree. It is true that in some instances, a reviewing court may be precluded from a meaningful review of the issues raised on appeal due to the failure by appellant to provide a transcript of a hearing that memorialized the basis of the trial court's decision. (See, e.g., *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; *Rhule v. WaveFront Tech., Inc.* (2017) 8 Cal.App.5th 1223, 1228–1229; *In re Valerie A.* (2007) 152 Cal.App.4th 987, 1002.) Here, however, the trial court issued an eight-page written order detailing the bases of its decision on Plaintiffs' fee

## A. Applicable Legal Principles and Standard of Review

"To calculate a fee award, a trial court must first determine the lodestar—the number of hours reasonably expended, multiplied by the reasonable hourly rate." (*Sonoma Land Trust v. Thompson* (2021) 63 Cal.App.5th 978, 983 (*Sonoma*).) The court may then consider various factors and apply a positive or negative multiplier to the lodestar to fix the fee at the fair market value for the litigation. (*Snoeck v. ExakTime Innovations, Inc.* (2023) 96 Cal.App.5th 908, 920.)

"We review the decision to award attorney fees, and the amount of fees awarded, for abuse of discretion, mindful of the fact that the trial judge is in the best position to assess the value of an attorney's performance." (*Sonoma, supra*, 63 Cal.App.5th at pp. 983–984.) This standard of review is "highly deferential to the views of the trial court" (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239 (*Nichols*)) and we will not disturb the court's decision unless we are convinced it is clearly wrong (*PLCM Grp., Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM*)). As to matters on which the record is silent, we make all inferences and presumptions necessary to support the judgment. (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67 (*Gorman*).) Appellant bears the burden of demonstrating any error. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140–1141 (*Ketchum*).)

## B. Rates Used in Calculation of Lodestar

We reject UPA's contention the trial court erroneously considered and used billing rates from outside of Sonoma County, despite Plaintiffs' failure to

---

motion. The record also contains extensive information regarding the arguments raised by the parties relative to the issue of attorney fees. We are therefore not precluded from a meaningful review of the merits of the appeal.

demonstrate that hiring local counsel was impracticable. Although UPA is correct an attorney fee award should be based on hourly rates prevailing in the community for similar work (*PLCM*, *supra*, 22 Cal.4th at p. 1095) and higher out-of-town rates are warranted only upon a showing that hiring local counsel was impracticable (*Nichols*, *supra*, 155 Cal.App.4th at p. 1244), UPA's argument is flawed because, here, the trial court did *not* award Plaintiffs' counsel out-of-town rates.

As UPA itself acknowledges, the trial court clearly stated in its attorney fee order that Plaintiffs failed to " 'offer any explanation of whether [they] sought out any counsel in Sonoma County before engaging with Counsel in Los Angeles,' " and " 'did not sufficiently show that their Los Angeles hourly rates [we]re reasonable.' " The court then proceeded to "*reduce* the hourly rates" from the requested rates of $525 to $825 to $400 to $600. (Italics added.) This record clearly demonstrates the court did not award the higher Los Angeles County rates but, rather, rates that were commensurate with the prevailing rates in Sonoma County.

UPA takes issue with the fact the trial court did not adopt the $250 to $375 rates it had proposed in opposition to the fee motion, which were based on its presentation of six Sonoma County cases where courts had awarded such rates. UPA also points out, among other things, that the expert declaration Plaintiffs submitted to support their fee request was "predominated" by the application of rates awarded in non-Sonoma County cases. We are not persuaded.

Plaintiffs' expert, the author of an established treatise on California attorney fees, did not rely only on Los Angeles attorney rates in his determination that Plaintiffs' counsels' rates were reasonable. He also stated Plaintiffs' counsels' rates were consistent with rates previously held

5

reasonable by the Sonoma County Superior Court. In support, the expert cited five cases from the Sonoma and Napa County areas where attorneys were awarded hourly rates ranging from $200 to $1,044. Based on this evidence, the trial court did not abuse its discretion in concluding that the $400 to $600 rate ultimately awarded to Plaintiffs' counsel was the reasonable prevailing rate in the community. (See *PCLM*, *supra*, 22 Cal.4th at p. 1095; *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 702–703 [determinations regarding the " 'market rate' " for attorney services lie within the broad discretion of the trial court].)

### C.    Hours Used in Lodestar Calculation

UPA contends Plaintiffs' counsel excessively billed as evidenced by multiple time entries for meetings attended by three to seven billers, entries that were purportedly inflated given the simplicity of the tasks or issues involved and the availability of "shell pleadings," and entries for purely administrative functions. UPA therefore asserts the trial court should have made an "across-the board" reduction to Plaintiffs' counsel's fees. We are not persuaded.

UPA relies on *Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24 (*Morris*) and *Mikhaeilpoor v. BMW of North America, LLC* (2020) 48 Cal.App.5th 240 (*Mikhaeilpoor*) to support its assertion the trial court should have cut hours where duplicative billing occurred or where tasks took longer than reasonably required given the simplicity of the issues. Its reliance on these cases is misplaced.

Neither *Morris* nor *Mikaeilpoor* mandated an across-the-board reduction in hours whenever multiple attorneys bill for the same tasks or when more time than is reasonable is spent on a particular task. (See *Morris*, *supra*, 41 Cal.App.5th at pp. 38–40; *Mikhaeilpoor*, *supra*,

6

48 Cal.App.5th at pp. 248–250.) Rather, in both cases, the Courts of Appeal simply deferred to and upheld the trial courts' exercise of discretion in determining what hours were reasonably spent on the litigation which, in those cases, resulted in the trial court reducing the hours. (See *Morris*, at p. 40; *Mikhaeilpoor*, at pp. 246, 250.) *Morris* and *Mikheilpoor* do not therefore aid UPA's position. To the contrary, they are both examples of the well-established principle that "the lodestar method vests the trial court with the discretion to decide which of the hours expended by the attorneys were 'reasonably spent' on the litigation." (*Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 449.) Adhering to this principle, we will not disturb the trial court's determination on this issue unless we are convinced it was clearly wrong. (*PLCM*, *supra*, 22 Cal.4th at p. 1095.)

Here, we are not convinced the trial court erred in its determination regarding the reasonableness of Plaintiffs' counsel's hours. UPA nitpicks through Plaintiffs' counsel's billing records, taking issue with less than 30 hours of purportedly duplicative meeting time, approximately 10 hours of time billed for administrative tasks, less than 50 hours of deposition preparation and attendance time, and approximately 180 hours of time spent on a motion for summary adjudication, among other things. Noticeably absent from UPA's brief, however, is any mention of how many hours its own attorneys devoted to the tasks and litigation events it is disputing. As such, UPA's complaints fall flat because "[e]vidence of how much work one side did is an independent gauge of how much the other side did on the same case." (*Pollock v. Kelso* (2025) 107 Cal.App.5th 1190, 1197.)

The trial court considered the same arguments UPA now raises on appeal and ultimately refused to reduce Plaintiffs' counsels' hours because it was "familiar enough with th[e] litigation to appreciate the extensive amount

7

of work" Plaintiffs' counsel spent on the matter and "to determine that Plaintiffs' counsel's time allotments [w]ere reasonable." We will not take it upon ourselves to second-guess the trial court who was in the best position to assess the value of the attorneys' services. (See *Sonoma*, *supra*, 63 Cal.App.5th at pp. 983–984.) This is particularly the case given the fact the hours complained of constitute a very small percentage of the approximately 2,400 hours of work spent by Plaintiffs' counsel over the course of more than four years of litigation.

### D. Application of a 1.5 Multiplier

The trial court stated in its order that it would "reduce the hourly rates but maintain the multiplier requested." UPA argues the court erred in failing to explain the basis for the 1.5 multiplier and in applying the multiplier. We disagree.

There is no requirement that trial courts "explain their decisions on all motions for attorney fees and costs." (*Gorman*, *supra*, 178 Cal.App.4th at p. 67.) Though it is true appellate review is "facilitated" by a specification of the factors considered in selecting a multiplier, "failure to do so does not compel a reversal." (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1249.) A trial court is not required to provide further explanation of a multiplier unless the record does not support the upward adjustment of the lodestar. (*Pellegrino v. Robert Half Internat., Inc.* (2010) 182 Cal.App.4th 278, 291.) Instead, reviewing courts " 'presume that the trial court considered all appropriate factors in selecting a multiplier and applying it to the lodestar figure.' " (*Taylor*, at p. 1249.)

Here, the record supports the upward adjustment of the lodestar. In determining if a multiplier is appropriate, a court may consider factors such as "(1) the novelty and difficulty of the questions involved, (2) the skill

8

displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." (*Ketchum*, *supra*, 24 Cal.4th at p. 1132.)

In this case, Plaintiffs' counsel attested that his firm took this matter on a contingency basis, had never received any compensation in this matter, and would not have recovered any funds unless the matter resolved. He also indicated that after beginning work on this matter, he "turned down several cases because of the time necessary for attorneys [at his] firm to litigate this matter." Additionally, Plaintiffs' counsel represented this case was not a " 'cookie-cutter' " case that resolved early but a complex matter that involved novel legal issues and an aggressive defense. UPA, on the other hand, argues this case did not involve much risk because it addressed "straightforward" wage issues which UPA suggests it did not dispute; further, UPA asserts the recovery for Plaintiffs was limited.

At the outset, the record does not support UPA's disingenuous contention that it "***never denied***" Plaintiffs were entitled to a prevailing wage. To the contrary, the record indicates that throughout the litigation, UPA disputed the issue of whether it owed Plaintiffs any wages. Regardless, we need not address the issues of risk, complexity of issues or recovery obtained in the litigation because either the fact Plaintiffs' counsel took the case on a contingency basis or the fact counsel were precluded from taking on other work could justify a modest 1.5 multiplier. (See *Sonoma*, *supra*, 63 Cal.App.5th at p. 986 ["The court may apply a multiplier based on contingent risk, exceptional skill, or numerous other factors. [Citation.] There is no magic formula; any one factor may justify an enhancement."].) With respect to contingent fees in particular, courts have reasoned that such fees "must be higher than a fee for the same legal services paid" to

9

"compensate[] the lawyer not only for the legal services he renders but for the loan of those services." (*Ketchum, supra*, 24 Cal.4th at p. 1132.)

UPA cites *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615 (*Ramos*) and *Northwest Energetic Services, LLC v. California Franchise Tax Bd.* (2008) 159 Cal.App.4th 841 (*Northwest*) for the proposition the trial court was required to explain its application of a multiplier. But *Ramos* and *Northwest* are distinguishable.

In *Ramos*, the trial court applied a relatively large 2.5 multiplier to the lodestar based on its consideration of factors (i.e. skilled representation and public interest benefits conferred by the litigation) which it had already used to determine the lodestar. (*Ramos, supra*, 82 Cal.App.4th at pp. 625–626.) The Court of Appeal held that under *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 647, this "double counting of factors" impermissibly created a windfall. (*Ramos, supra*, 82 CalApp.4th at p. 626.) Thus, the *Ramos* court reasoned that "[i]f the trial court's lodestar calculation already reflected such factors, its order d[id] not adequately reveal its reasoning for a further enhancement on this account" and "[m]ore detailed findings [we]re essential to permit meaningful review of the award." (*Ibid.*) Here, in contrast, UPA does not argue the trial court double counted any factors in calculating the lodestar and determining the multiplier. As such, its reliance on language from the *Ramos* decision regarding the need for findings is misplaced.

As for *Northwest*, the trial court there decided on a lodestar figure of $219,566.95 before ultimately awarding $3.5 million in fees or, in other words, 16 times the lodestar amount. (*Northwest, supra*, 159 Cal.App.4th at p. 882.) Without further elaboration, the court justified this award by generally listing factors such as the expertise of the prevailing party's

10

attorneys, the novelty and difficulty of the questions involved, the skill displayed in presenting the case, the contingent nature of the fee award, the importance of the rights preserved through the action, the results achieved, and the benefits conferred on the public through the action. (*Id.* at p. 880.) The Court of Appeal held this explanation insufficient and the award (which effectively amounted to a billing rate of approximately $5,546 per hour) was unsupported by the record. (*Id.* at p. 882.) Among other things, the *Northwest* court noted the matter was not particularly complex, some of the factors recited were already considered in other parts of the analyses, and consideration of other factors listed were inappropriate in determining a multiplier. (*Id.* at pp. 881–882.) Here, in contrast, we are dealing with a modest 1.5 multiplier and the record sufficiently supports the application of that multiplier.

## DISPOSITION

The judgment is affirmed. Plaintiffs are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

11

_____

Langhorne Wilson, J.


WE CONCUR:



_____

Humes, P. J.



_____

Smiley, J.