[No. G040762. Fourth Dist., Div. Three. Jan. 28, 2010.]

MARIA PELLEGRINO et al., Plaintiffs and Respondents, v.
ROBERT HALF INTERNATIONAL, INC., Defendant and Appellant.

COUNSEL

Seyfarth Shaw, Gilmore F. Diekmann, Jr., Raymond R. Kepner, Todd C. Hunt and Michael D. Mandel for Defendant and Appellant.

Shanberg Stafford, Ross E. Shanberg, Shane C. Stafford; Quest Law Firm and Robert C. Robinson for Plaintiffs and Respondents.

OPINION

FYBEL, J.—

## INTRODUCTION

Plaintiffs Maria Pellegrino, Nadia Balici, Carolyn Cox, Kelli Maresch, Jennifer McCasland, and James Rossetto (collectively, plaintiffs) sued their former employer, temporary staffing firm Robert Half International, Inc. (RHI), for violations of the wage and hour provisions of the Labor Code and for unfair competition.[1] Plaintiffs' unfair competition claims were solely based on the wage and hour claims. The trial court bifurcated plaintiffs' equitable claims for unfair competition from the remaining claims, and the parties first tried to the trial court RHI's affirmative defense that plaintiffs were exempt employees. After RHI completed its case-in-chief on that affirmative defense, the trial court granted plaintiffs' motion for judgment under Code of Civil Procedure section 631.8, concluding plaintiffs did not fall within the administrative exemption. Reserving the right to seek recovery of attorney fees, the parties thereafter stipulated to judgment as to all remaining issues in the case and judgment was entered accordingly. The trial court granted plaintiffs' motion for attorney fees, and an amended judgment was entered, awarding, inter alia, plaintiffs' counsel $978,121.98 in attorney fees.

RHI challenges the trial court's attorney fees award on the grounds the court (1) failed to sufficiently discount a portion of plaintiffs' attorney fees to account for the trial on the unfair competition claims for which no attorney fees were available; (2) should not have applied any multiplier to the lodestar figure in determining the attorney fees award, much less a multiplier as high as 1.75; and (3) improperly awarded an enhancement for "fees on fees."

---

[1] Business and Professions Code section 17200 et seq.

We affirm in part and reverse in part. The trial court did not err by reducing the lodestar amount by no more than 15 percent to reflect the parties' litigation of the unfair competition claims, because the legal and factual issues presented in those claims were interrelated with those issues presented by plaintiffs' wage and hour claims (for which attorney fees are available). The record supports the trial court's application of a 1.75 multiplier to the reduced lodestar amount for attorney fees generated up until plaintiffs brought their motion for attorney fees, based on the factors set forth in *Ketchum v. Moses* (2001) 24 Cal.4th 1122 [104 Cal.Rptr.2d 377, 17 P.3d 735] (*Ketchum*). The record does not support, however, the application of a 1.75 multiplier to fees incurred in bringing the motion for attorney fees. We therefore reverse the amended judgment to the extent it applies a multiplier to fees incurred in bringing the attorney fees motion and remand to the trial court to recalculate the attorney fees award accordingly. We otherwise affirm the amended judgment.

## BACKGROUND[2]

### I.

#### PLEADINGS

In the first amended complaint, plaintiffs alleged RHI (1) failed to pay overtime compensation in violation of Labor Code sections 510, subdivision (a), 1194, 201, 202, and 203; (2) failed to provide proper meal and rest breaks in violation of Labor Code sections 512 and 226.7 and Industrial Welfare Commission wage order No. 4-2001;[3] (3) failed to maintain and submit itemized wage statements in violation of Labor Code section 226; and (4) engaged in unfair competition in violation of Business and Professions Code section 17200 based on the above referenced Labor Code sections. (All further statutory references are to the Labor Code unless otherwise specified.) Cox, McCasland, and Pellegrino alleged additional claims against RHI for nonpayment of commissions and unfair competition for such nonpayment (Bus. & Prof. Code, § 17200 et seq.). The first amended complaint alleged plaintiffs were employed by RHI as account executives, branch managers, and/or division directors. It further alleged plaintiffs regularly worked more than eight hours per day and/or 40 hours per week, but were not paid overtime wages or commissions and were not provided meal and rest periods or itemized statements of wages.

---

[2] Pursuant to Evidence Code section 459, subdivision (a) and section 452, subdivision (d), on our own motion, we take judicial notice of the appellate court record in *Pellegrino v. Robert Half International, Inc.*, case No. G039985.

[3] California Code of Regulations, title 8, section 11040.

RHI filed an answer to the first amended complaint which contained a general denial and alleged several affirmative defenses. RHI's eighth affirmative defense alleged all of plaintiffs' claims were barred "by a contractual agreement between Plaintiffs and Defendant to limit the time period within which any claims against Defendant may be filed." RHI also alleged, as its sixth affirmative defense, that plaintiffs were exempt from overtime compensation requirements under the Labor Code and the Industrial Welfare Commission wage order No. 4-2001 because they "were employed in an administrative, executive, professional, and/or relevant sales capacity within the meaning of the applicable wage order(s)."

## II.

### Motions for Summary Judgment and Summary Adjudication

RHI filed motions for summary judgment against plaintiffs. As to each plaintiff except Pellegrino, RHI argued the alleged claims were barred because each plaintiff failed to file his or her lawsuit within six months of the termination of employment as required by the employment agreement each signed.[4] RHI's motions were also brought on the ground that plaintiffs' wage and hour claims and unfair competition claims failed because plaintiffs were exempt from the laws underlying their claims.

Each plaintiff (except Pellegrino) filed a motion for summary adjudication on the ground the provision of his or her employment agreement shortening the applicable statutes of limitations was unlawful, and all plaintiffs moved for summary adjudication on the ground RHI's exemption affirmative defense failed because they did not meet the requirements for any exemption as a matter of law.

After concluding the limitation on claims provision was unenforceable, the trial court denied each of RHI's motions for summary judgment and granted McCasland's, Balici's, Cox's, Rossetto's, and Maresch's motions for summary adjudication on that issue. The court otherwise denied the motions for summary adjudication on the ground a triable issue of material fact existed as to whether plaintiffs were exempt employees.

---

[4] Although RHI filed a motion for summary judgment against Pellegrino, it was not based on the ground the limitation on claims provision barred her claims because she had filed her lawsuit prior to six months after the termination of her employment with RHI.

## III.

### TRIAL AND MOTION FOR JUDGMENT ON THE EXEMPTION DEFENSE

Before trial, the court bifurcated plaintiffs' unfair competition claims and ordered that such equitable claims first be tried to the court without a jury. As agreed to by RHI's counsel, the court bifurcated the exemption affirmative defense and tried that issue first. After 17 days of trial, and at the close of RHI's case-in-chief on the exemption affirmative defense, plaintiffs moved for judgment under Code of Civil Procedure section 631.8, arguing they performed a production or sales role in RHI's day-to-day business, but did not have an impact on RHI's policies or general business operations and therefore could not be exempt administrative employees. The trial court granted plaintiffs' motion.

## IV.

### STIPULATION FOR JUDGMENT AS TO REMAINING ISSUES AND APPEAL

On February 4, 2008, the parties entered into a stipulation regarding the remaining issues in the litigation. The judgment was entered, which stated in pertinent part: "The court bifurcated the plaintiffs' claims under California Business and Professions Code section 17200 and ordered they be tried first to the court sitting without a jury. The court bifurcated the exemption affirmative defense for all plaintiffs and tried the issues presented by that defense without a jury. The court ordered the defense to proceed first because it had the burden of proof on the defense. [¶] The court having ruled against defendant on the exemption affirmative defense, and the parties having stipulated to the elements of plaintiffs' prima facie case and the amounts of plaintiffs' damages and other monetary relief, the court has determined there is nothing further for it or for a jury to determine, and upon (a) the facts stipulated by the parties through their counsel, and (b) the court's order granting plaintiffs' motion for judgment." The trial court ordered judgment in favor of plaintiffs in the amounts set forth in the stipulation.

RHI appealed from the judgment. As set forth in our opinion, *Pellegrino v. Robert Half International, Inc.* (2010) 182 Cal.App.4th 87, we affirmed the underlying judgment.

Plaintiffs filed a motion for attorney fees under sections 1194,[5] 226, subdivision (e),[6] and 218.5,[7] and Code of Civil Procedure section 1021.

By written order, the court granted plaintiffs' motion for attorney fees, stating as follows:

"The Court having taken Plaintiffs' motion for attorneys' fees under submission now rules as follows:

"The Court awards as the [lode]star amount attorneys' fees apportioned as follows: $435,400.00 to the Shanberg Stafford LLP firm and $222,161.00 to the Quest Law Firm. In addition the Court finds that a multiplier should be applied and a reduction of 15% on the lodestar amount should apply based on the [Business and Professions Code section] 17200 claim.

"The factors to be considered generally in awarding a multiplier include: (1) the novelty and difficulty of the questions involved; (2) the skill displayed in presenting them; (3) the extent to which the nature of the litigation precluded other employment by the attorneys; and (4) the contingent nature of the fee award. [Citation.]

"The Court finds that all 4 factors apply in its evaluation of this request. After considering each factor and evaluating its relationship to the trial and handling of this matter the Court concludes a multiplier of 1.75 is appropriate and awards attorneys fees as follows:

---

[5] Section 1194, subdivision (a) provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

[6] Section 226, subdivision (a) requires every employer to provide employees at the time of payment of wages a written itemized statement showing, inter alia, the gross and net wages earned by the employee. Section 226, subdivision (e) provides: "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

[7] Section 218.5 provides in relevant part: "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. . . . [¶] This section does not apply to any action for which attorney's fees are recoverable under Section 1194."

| | |
|---|---|
| "Lodestar amount ($435,400 + $222,161): | $657,561.00 |
| "B&P 17200 15% reduction: | ($98,634.15) |
| "Subtotal: | $558,926.85 |
| "Lodestar multiplier: | 1.75 |
| "Total Fees awarded: | $978,121.98 |

"The Court orders moving parties to prepare all necessary orders, if any, for the Court's signature and to give notice."

The court filed an amended judgment providing in part "[t]hat Quest Law Firm and Shanberg Stafford LLP recover from defendant, jointly and severally, attorneys fees in the amount of $978,121.98, with post judgment interest on such amount to accrue from May 20, 2008." The amended judgment further stated: "Judgment was originally entered on February 8, 2008. That date is the date from which post judgment interest shall accrue except for the attorneys fees awarded, which shall accrue interest from May 20, 2008. The Judgment is hereby amended only to fill in the amounts of the costs in item 7 and the attorneys fees in item 8 that were left blank in the Judgment entered on February 8, 2008, and to state the date from which interest shall accrue on the attorney fees awarded."

RHI timely appealed from the amended judgment.

## DISCUSSION

RHI challenges the award on the grounds the trial court improperly adjusted the lodestar figure by (1) not sufficiently reducing the award to account for the trial of the unfair competition claims for which no attorney fees were available; (2) applying any multiplier to the lodestar figure at all, much less a 1.75 multiplier, because no findings supported doing so; and (3) awarding an enhancement for "fees on fees."[8] We address each of RHI's arguments in turn.

### I.

#### STANDARD OF REVIEW

" 'The standard of review on issues of attorney's fees and costs is abuse of discretion. The trial court's decision will only be disturbed when there is no

---

[8] RHI also argues the attorney fees award must be reversed if this court reverses the underlying judgment in *Pellegrino v. Robert Half International, Inc.*, case No. G039985. As discussed *ante*, in *Pellegrino v. Robert Half International, Inc.*, *supra*, 182 Cal.App.4th 87, we affirmed the underlying judgment.

substantial evidence to support the trial court's findings or when there has been a miscarriage of justice. If the trial court has made no findings, the reviewing court will infer all findings necessary to support the judgment and then examine the record to see if the findings are based on substantial evidence.' [Citation.]" (*Frei v. Davey* (2004) 124 Cal.App.4th 1506, 1512 [22 Cal.Rptr.3d 429].)

## II.

### THE TRIAL COURT DID NOT FAIL TO SUFFICIENTLY DISCOUNT A PORTION OF PLAINTIFFS' ATTORNEY FEES TO ACCOUNT FOR TRIAL ON THE UNFAIR COMPETITION CLAIMS.

After determining a total lodestar amount of $657,561, the trial court reduced that amount by 15 percent to account for time spent on the unfair competition claims. (*Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1179 [121 Cal.Rptr.2d 79] ["The unfair competition law does not provide for attorney fees, and relief is generally limited to injunctive relief and restitution."].) RHI argues: "As a matter of law, plaintiffs could not establish any entitlement to fees for their unfair competition claims. Nevertheless, in seeking an award of attorneys' fees, they did not even attempt to apportion their attorney's fees amongst their claims, instead asking for all of them. They insisted there was no reasonable way to apportion their fees between the claims for which fees are not available, and those for which they are. . . . To the contrary, there is an obvious and simple way to apportion at least one large segment of their fees: eliminate all fees related to the trial in this matter. As the only claim that actually was tried was the unfair competition claim, no fees relating to the trial should have been awarded at all." RHI's argument is without merit for the following reasons.

■ Citing *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129–130 [158 Cal.Rptr.1, 599 P.2d 83], the appellate court in *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1133 [94 Cal.Rptr.2d 448], stated: "When a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action. However, the joinder of causes of action should not dilute the right to attorney fees. Such fees need not be apportioned when incurred for representation of an issue common to both a cause of action for which fees are permitted and one for which they are not. All expenses incurred on the common issues qualify for an award. [Citation.] When the liability issues are so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not, then allocation is not required." The court held, "the trial court

acted properly as a matter of law when it did not require [the plaintiff] to formally apportion its hours between claims for which attorney fees were compensable by statute and other hours." (*Akins v. Enterprise Rent-A-Car Co., supra*, at p. 1134.)

■ In *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1604 [71 Cal.Rptr.3d 361], the appellate court stated: "Where fees are authorized for some causes of action in a complaint but not for others, allocation is a matter within the trial court's discretion. [Citation.] A trial court's exercise of discretion is abused only when its ruling ' " ' "exceeds the bounds of reason, all of the circumstances before it being considered." ' " ' [Citation.]"

■ Here, the factual and legal issues surrounding RHI's liability for violation of unfair competition and for plaintiffs' wage and hour claims could not be more interrelated—in order for plaintiffs to prove unfair competition, they had to prove RHI violated the wage and hour claims upon which the unfair competition claims were based. The only issue tried to the court was whether RHI proved its affirmative defense that plaintiffs qualified under the administrative exemption. As RHI asserted the exemption as an affirmative defense to all claims in this case (other than the claims based on RHI's failure to pay commissions), the applicability of the exemption to plaintiffs was thus an issue common to legal and equitable claims.

RHI contends apportionment was appropriate because plaintiffs' unfair competition claims had a four-year statute of limitations as opposed to the three-year statute of limitations that applied to the wage and hour claims. But, notwithstanding the commonality of the legal and factual issues in the unfair competition claims and the wage and hour claims at issue, the trial court decreased the lodestar figure by 15 percent to account for the unfair competition claims. RHI does not explain how the 15 percent reduction was unsatisfactory in accounting for the differential between the claims' respective statutes of limitations. On this record, the trial court did not abuse its discretion by declining to further reduce the lodestar figure.

■ RHI argues the trial court erred by failing to explain how it decided on a 15 percent reduction for the unfair competition claims; RHI's argument is without merit. The California Supreme Court rejected the same argument in *Ketchum, supra*, 24 Cal.4th 1122, 1140–1141, stating: "[The plaintiff] also contends that the superior court erred by failing to provide a 'reasoned explanation' for denying his objections to specific items in the billing records. The superior court was not required to issue a statement of decision with regard to the fee award. [Citation.] Moreover, although [the plaintiff] opposed the motion for attorney fees, he did not request a statement of decision with

specific findings. ' "All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' [Citation.] As we explained in *Maria P.*[ *v. Riles* (1987) 43 Cal.3d 1281, 1295–1296 [240 Cal.Rptr. 872, 743 P.2d 932]]: 'It is the burden of the party challenging the fee award on appeal to provide an adequate record to assess error. [Citations.] Here, [the plaintiff] should have augmented the record with a settled statement of the proceeding. [Citations.] Because [he] failed to furnish an adequate record of the attorney fee proceedings, [the plaintiff's] claim must be resolved against [him].' "

RHI did not request a statement of decision as to the trial court's ruling on the attorney fees motion. We find no error.

### III.

#### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY APPLYING A 1.75 MULTIPLIER TO THE LODESTAR FIGURE.

RHI argues, "plaintiffs failed to carry their burden of establishing entitlement to a multiplier, and the trial court abused its discretion in awarding one, requiring reversal of the order." RHI further argues that, even if a multiplier was appropriate to apply in this case, the 1.75 multiplier applied in this case was "inherently unreasonable."

■ In *Ketchum, supra,* 24 Cal.4th at pages 1131–1132, the Supreme Court stated: "Under *Serrano III* [*Serrano v. Priest* (1977) 20 Cal.3d 25, 48 [141 Cal.Rptr. 315, 569 P.2d 1303]], a court assessing attorney fees begins with a touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case.' [Citation.] We expressly approved the use of prevailing hourly rates as a basis for the lodestar, noting that anchoring the calculation of attorney fees to the lodestar adjustment method ' "is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts." ' [Citation.] In referring to '*reasonable*' compensation, we indicated that trial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation. [Citation.]"

■ The Supreme Court further stated: "Under *Serrano III*, the lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded

other employment by the attorneys, (4) the contingent nature of the fee award. [Citation.] The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services. The ' "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Ketchum, supra,* 24 Cal.4th at p. 1132.)

Here, the trial court's order stated that it had selected a 1.75 multiplier to calculate plaintiffs' attorney fees after finding that each of the four factors (described *ante* in *Ketchum, supra,* 24 Cal.4th at p. 1132) applied in this case and that a 1.75 multiplier was appropriate. The court did not offer any further explanation of its finding. But the court was not required to provide any further explanation absent a statement of decision on this issue or unless the upward adjustment of the lodestar figure was unsupported by the record. (See *Northwest Energetic Services, LLC v. California Franchise Tax Bd.* (2008) 159 Cal.App.4th 841, 882 [71 Cal.Rptr. 3d 642]; Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2009) ¶ 17:153.34, p. 17-111 (rev. # 1, 2009) ["If the record does not support an upward adjustment of the lodestar, the trial court must 'more precisely articulate why such increment is appropriate.' "].)[9]

The record supports the court's finding as to the novelty and difficulty of the questions at issue in this litigation. This case was vigorously litigated. Twelve motions for summary judgment were filed, which involved separate sets of facts unique to each plaintiff. The case involved complex issues of employment law including the enforceability of a contractually shortened statute of limitations provision contained in an employment agreement and the scope of the administrative exemption for each plaintiff in the context of RHI's business. Furthermore, RHI's classification of plaintiffs as exempt employees resulted in RHI not maintaining time and wage records, creating the difficult task of reconstructing records to determine the extent of the wages, penalties, and other damages owed to each plaintiff. Although RHI argues the issues presented in this case were not novel or difficult because no expert witness testified at trial, the record shows RHI designated two "liability" experts and had also retained a damages expert, each of whom were deposed by plaintiffs' counsel.

---

[9] Citing *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615 [98 Cal.Rptr. 2d 388], RHI argues the trial court failed to make appropriate findings explaining or justifying its ruling beyond general reference to the *Serrano III* factors. Unlike this case, in *Ramos,* the trial court applied the large multiplier of 2.5, which the appellate court concluded required findings that explained the court's determination. (*Id.* at pp. 626–627.)

The trial court presided over 17 days of trial, decided motions for summary judgment and motions for summary adjudication, and presided at various hearings. Thus, as expressed by the Supreme Court in *Ketchum, supra*, 24 Cal.4th at page 1132, the trial court was in the best position to judge the value of plaintiffs' counsel's services rendered. The record before us does not show that the trial court was " ' "clearly wrong" ' " in this regard. (*Ibid.*)

RHI does not dispute the amount of time plaintiffs' counsel asserted was spent litigating this case or that the work was done on a contingency basis. In 10 of the 12 motions for summary judgment and summary adjudication filed, RHI argued its affirmative defense that the limitation on claims provision contained in plaintiffs' employment agreements barred all claims. Had RHI prevailed on that affirmative defense, plaintiffs' attorneys would not have been compensated for any work they performed in the case. Furthermore, the bench trial on plaintiffs' unfair competition claims ended up addressing a single issue—whether RHI's affirmative defense that plaintiffs were exempt from the wage and hour statutory violations underlying most of their claims. Plaintiffs' counsel risked not being paid for their work in the event that RHI prevailed on that affirmative defense.

■ RHI argues, "plaintiffs' counsel did not present *any* evidence of any work they had to reject or otherwise lost because of the time commitment they made to this case, before or during trial." In *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1174 [78 Cal.Rptr.3d 572], the appellate court upheld an attorney fees award in which a 1.65 multiplier was applied to the lodestar figure. The appellate court stated: "[The defendant] complains the court improperly based the multiplier on 'contingent risk' without evidence of 'comparative billing data (such as hours billed annually by the firm or amount of income deferred)' or without evidence that plaintiffs' attorneys 'sacrificed opportunities for other work' to represent the class. However, [the defendant] takes an unduly narrow view of the concept of 'contingent risk.' It is not simply that counsel turned away paid work for a time in order to represent that class, but that counsel risked never receiving compensation *at all*. The claims and defenses in this case raised a significant number of complex legal issues of first impression, and class counsel took a substantial risk that it would not prevail on these issues and thus would not recover a full fee. [Citation.] Our courts have recognized that an enhanced fee award is necessary to compensate attorneys for taking such risks: ' "A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. . . ." [Citation.] "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the

second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." [Citations.]' [Citation.]" (*Id.* at pp. 1217–1218.)

Furthermore, RHI does not cite any legal authority supporting its argument that a multiplier of 1.75 is inherently unreasonable in this case. In support of their motion for attorney fees, plaintiffs' counsel submitted the declaration of employment litigator Michelle A. Reinglass, in which she stated that, based on the factors relied upon by the trial court, "it is my opinion that adjusting the lodestar amount in this case by applying a multiplier of between 1.5 and 2.0 is reasonable and justified, and would likely encourage capable counsel to accept contingent representation in non-class action cases of comparable risk, complexity, and significance." Plaintiffs' counsel also submitted the declaration of wage and hour litigator Kevin T. Barnes who stated: "In my opinion, based upon the factors set forth in *Serrano v. Priest*[, *supra*,] 20 Cal.3d 25, 48–49, a multiplier of 1.5 to 2.0 is justified given the risk undertaken by plaintiffs' counsel in this case, the level of success achieved, the significance in the result as applied to present and former employees of Robert Half as well as the staffing industry generally, the significance of this case in terms of helping to define and apply the administrative exemption, the reasonableness of the lodestar amount of the fees incurred, and the substantially full recovery for the six plaintiffs in this case. In my opinion, a reasonable multiplier of 1.5 to 2.0 is justified. I am factoring in the fact that this is not a class action where reasonable multipliers of 2.0 to 4.0 are often applied." On this record, we cannot conclude the trial court abused its discretion in selecting a 1.75 multiplier.

■ RHI argues the trial court's abuse of discretion is evidenced by the court's comments during the hearing on plaintiffs' attorney fees motion, which, RHI argues, were inconsistent with the final attorney fees award. In *Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1451 [125 Cal.Rptr.2d 277], a panel of this court stated: "Because we review the correctness of the order, and not the court's reasons, we will not consider the court's oral comments or use them to undermine the order ultimately entered. (Cf. *Selfridge v. Carnation Co.* (1962) 200 Cal.App.2d 245, 249 [19 Cal.Rptr. 310] ['oral opinions or statements of the court may not be considered to reverse or impeach the final decision of the court which is conclusively merged in its findings and judgment']; *Birch v. Mahaney* (1955) 137 Cal.App.2d 584, 588 [290 P.2d 579] ['remarks made by a trial judge during a trial or argument, or even an opinion filed by him, cannot be used to impeach a formal decision, order or judgment later made or entered'].) Here, where the trial court was not required to prepare a statement of decision or explain its reasons for denying the injunction, it is especially important to refrain from using the court's oral comments as a basis for reversal. In that situation, reviewing the trial court's oral comments would in effect require the trial

court either to prepare a statement of decision where none is required or to say nothing during argument to avoid creating grounds for impeaching the final order. We decline to place the trial courts in such an untenable position."

Here, we will similarly refrain from using the court's oral comments during the hearing to impeach the final attorney fees award.

We find no error.

## IV.

### WE REMAND TO THE TRIAL COURT TO CLARIFY ITS ORDER AS TO ANY ENHANCEMENT FOR "FEES ON FEES."

RHI argues, "plaintiffs' counsel sought—and the trial court awarded—attorneys' fees for time they spent pursuing their attorneys' fees award. Generally, fees for fee-related litigation (so-called 'fees on fees') do not warrant an enhancement. [Citation.] But here, the trial court awarded a multiplier for the entire amount of fees claimed by plaintiffs' counsel, without subtracting out the amount incurred in prosecuting the attorneys' fees award. This was error."

■ In *Ketchum, supra,* 24 Cal.4th at page 1141, the California Supreme Court stated: "[The plaintiff] further asserts that the fee award improperly included 'fees on fees,' i.e., fees incurred in litigating the award of attorney fees. The Court of Appeal correctly rejected the argument: an award of fees may include not only the fees incurred with respect to the underlying claim, but also the fees incurred in enforcing the right to mandatory fees . . . . As we explained in *Serrano IV* [*Serrano v. Unruh* (1982)] 32 Cal.3d [621,] 639 [186 Cal.Rptr. 754, 652 P.2d 985], 'follow[ing] the rule of the overwhelming majority of courts that have considered the question . . . . [w]e hold . . . that, absent circumstances rendering the award unjust, fees recoverable . . . ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim.' The amount of litigation on this issue typically lies in the plaintiff's hands: having litigated the matter tenaciously, [the plaintiff] ' "cannot . . . be heard to complain about the time necessarily spent by the [defendant] in response." ' [Citation.]"

In *Ketchum,* the Supreme Court, however, reversed the attorney fees award and remanded the matter to the Court of Appeal to remand in turn to the trial court because the court had applied a multiplier to fees incurred in seeking fees. (*Ketchum, supra,* 24 Cal.4th at p. 1141.) The court explained, "it appears that no enhancement for contingent risk was properly applied to such fees. Although the entitlement to attorney fees on the motion to strike was

subject to the risk that [the defendant] and his attorney might not prevail on the motion and thus not be entitled to attorney fees, once the motion was successful, attorney fees were *mandatory* under Code of Civil Procedure section 425.16, subdivision (c). An award of fees was, accordingly, no longer contingent. For this reason, it was error for the superior court to apply an enhancement for contingent risk to the fees on fees accrued after the motion to strike was granted." (*Id.* at pp. 1141–1142.)

In *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 582–583 [21 Cal.Rptr.3d 331, 101 P.3d 140], the Supreme Court further addressed fee enhancements for fees on fees litigation, stating in relevant part: "[W]e recognize that the enhancement justified for fees in the underlying litigation may differ from the enhancement warranted in the fee litigation, and that a lower enhancement, or no enhancement, may be appropriate in the latter litigation. In fact, a closer examination of the enhancement factors set forth in *Serrano III* leads to the conclusion that in most cases, the enhancement for the fee litigation should be lower than the enhancement for the underlying litigation, if one is applied at all. [¶] This is especially true of the 'results obtained' factor that the trial court relied on in part to justify its multiplier. 'The "results obtained" factor can properly be used to enhance a lodestar calculation where an exceptional effort produced an exceptional benefit.' [Citation.] While the trial court may have legitimately concluded that the underlying litigation had produced an exceptional benefit for consumers in the present case, the same cannot be said of the fee litigation itself, which simply produced fees to compensate plaintiffs' attorneys for their efforts. We conclude fees for fee litigation should not be enhanced on that basis. [¶] Moreover, while this factor often takes into account the exceptional skill exhibited by the attorney [citations], an enhancement on that basis is rarely justified for fee-related litigation. This litigation . . . is for the most part simpler than litigation on the merits. On the other hand, while attorney fees may not be used to punish defendants [citation], fees for fee litigation may be enhanced when a defendant's opposition to the fee motion creates extraordinary difficulties."

In *Graham v. DaimlerChrysler Corp., supra*, 34 Cal.4th at page 584, the trial court had applied a 2.25 multiplier in awarding attorney fees but did "not differentiat[e] between the fees in the underlying litigation and the fees on fees." The Supreme Court reversed the award, stating: "It appears the court over-enhanced the fees on fees by inappropriately using the 'results obtained' factor to arrive at the multiplier. On remand the court should also reexamine its use of the risk factor. While it was not required to explain how it calculated that factor, and we will generally presume the attorney fee award was correct ' " 'on matters as to which the record is silent' " ' [citation], it would be appropriate for the trial court to reassess its calculation of a risk enhancement for fees on fees in light of this opinion's conclusion that the risk

multiplier for those fees generally should be lower than for fees in the underlying litigation. The trial court is therefore directed on remand to recalculate the proper multiplier if it concludes that plaintiffs are eligible for some attorney fees." (*Ibid.*)

Here, the trial court applied the 1.75 multiplier to attorney fees generated in the underlying litigation and those incurred in the preparation of plaintiffs' motion for attorney fees. None of the factors cited by the trial court as supporting the 1.75 multiplier applies to the fees incurred in counsel's motion for prevailing party attorney fees. We therefore remand the matter to the trial court to recalculate the award of attorney fees to eliminate the application of a multiplier to fees incurred solely in the preparation of that motion.

## DISPOSITION

We reverse the amended judgment as to the multiplier applied to attorney fees incurred in bringing plaintiffs' attorney fees motion and remand the matter to the trial court to recalculate those fees accordingly, without a multiplier. We otherwise affirm the amended judgment. In the interest of justice and because both parties prevailed in part on this appeal, no party shall recover costs on appeal.

Rylaarsdam, Acting P. J., and Aronson, J., concurred.