Filed 11/26/13  P. v. Nazarzai CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047866 |
| v. | (Super. Ct. No. 30-2009-00125950) |
| ZULMAI NAZARZAI, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Andrew P. Banks, Judge.  Affirmed.  Motion to strike portions of appellant's reply brief. Denied.

Law Offices of Murphy & Eftekhari, Thomas Murphy and Afshin Eftekhari for Defendant and Appellant.

Kamala D. Harris, Attorney General, Frances T. Grunder, Assistant Attorney General, Michele R. Van Gelderen and Sheldon H. Jaffe, Deputy Attorneys General, for Plaintiff and Respondent.

\*                  \*                  \*

INTRODUCTION

In 2009, the Attorney General filed a complaint alleging defendant Zulmai Nazarzai and his codefendants preyed on consumers who were facing foreclosures of their homes, by unlawfully charging those consumers thousands of dollars in "up front fees" while "falsely promising to help them negotiate better mortgage terms from their lenders and to rescue them from foreclosure." Within hours of Nazarzai being served with an order freezing his assets, he withdrew $426,318 from a bank account. The trial court ordered Nazarzai to turn over $360,540 in cash to a court-appointed receiver by a certain date and time. After Nazarzai did not comply with the court's order, contempt proceedings were conducted. The court convicted Nazarzai of contempt and Nazarzai remains in custody.

Judgment was entered following a bench trial, requiring Nazarzai and his codefendants to pay, inter alia, over $2 million in civil penalties; Nazarzai did not appeal from the judgment. The trial court granted the Attorney General's application to issue a second turnover order requiring Nazarzai to deliver the $360,540 in cash by a certain date and time to the Orange County Sheriff pursuant to a writ of execution on the judgment that had been issued. Nazarzai appeals, asserting the second turnover order was issued in error.

We affirm. The second turnover order was issued pursuant to the writ of execution on the judgment as authorized by section 699.040 of the Code of Civil Procedure.

FACTS[1]

Defendant Statewide Financial Group, Inc., which did business as WeBeatAllRates.com and US Homeowners Assistance (USHA), was co-owned by Nazarzai along with defendants Hakimullah Sarpas and Fasela Sheren. USHA "ran a

---

[1] The summary of facts is based on the trial court's statement of decision issued following trial on the complaint in this matter.

2

boiler-room telemarketing operation" which involved making cold calls to consumers and offering loan modification services. "The cost for the service varied, but generally ran to the thousands of dollars which consumers had to pay in advance. USHA's sales representatives routinely made extravagant and false promises to consumers, including: USHA had a '97%' success rate; the customer was guaranteed a loan modification; USHA had a money-back guarantee; USHA's fees would be repaid by the lender; USHA was an 'attorney-based' company; USHA would save the consumer[']s home from foreclosure; and that the loan modification process would take a relatively short amount of time."

USHA also routinely sent consumers false and deceptive letters suggesting that USHA would secure a 20 percent reduction in the outstanding principal of their home loans, "a significant reduction in their mortgage interest rate, a correspondingly large reduction in their monthly payment, and forgiveness of past arrears." No evidence was admitted at trial, showing that "any customer ever received any benefit as a result of the efforts of USHA, or even that USHA ever negotiated with a bank or mortgage lender on behalf of a customer of USHA, although evidence was presented that USHA submitted false information to lenders." As a result of their deceptive and misleading practices, USHA procured over $2 million in up-front payments from consumers.

BACKGROUND

I.

THE COMPLAINT

On July 13, 2009, the Attorney General filed a complaint for civil penalties, a permanent injunction, and other equitable relief, against USHA, Sarpas, Nazarzai, and Sheren (collectively, defendants).[2] The complaint alleged defendants made untrue or

_____

[2] The complaint also named US Homeowners Preservation Center, Inc., and Rasha Yehia Melek, as defendants. The trial court granted US Homeowners Preservation Center, Inc.'s motion for nonsuit, and Melek was dismissed as a defendant before trial.

3

misleading representations and alleged claims for violation of California's false advertising law (FAL) (Bus. & Prof. Code, § 17500 et seq.), violation of California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), and violations of Civil Code sections 2945.4 and 2945.45. The complaint also alleged a separate claim for unfair competition against Sarpas and Melek.

## II.

### THE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The same day as the complaint was filed, the trial court issued a temporary restraining order and order to show cause, pursuant to which, inter alia, USHA was placed into a temporary receivership, defendants were required to disclose to the Attorney General information regarding their assets, and officers of USHA were enjoined from "spending, transferring, disbursing, encumbering, or otherwise dissipating any real or personal property without prior Court approval." Nazarzai was a director and the chief financial officer of USHA.

Nazarzai was served with the temporary restraining order about 3:30 p.m. on July 14, 2009. About 5:27 p.m. that same day, Nazarzai withdrew $426,318 from an undisclosed bank account.

In October 2009, the trial court issued a preliminary injunction in accordance with the temporary restraining order and continued the receivership. On November 6, in response to the preliminary injunction's requirement that he disclose asset information, Nazarzai confirmed he had $370,540 in cash assets, but he did not disclose the location of those funds.

## III.

### THE FIRST TURNOVER ORDER

On July 1, 2010, the trial court issued the following order requiring Nazarzai to turn over $360,540 in cash (the first turnover order): "Defendant Zulmai Nazarzai shall turn over to the Court all cash assets within his possession, custody or

4

control, including, without limitation, all monies held in any financial account held in whole or in part by or for Mr. Nazarzai, and all cash, including $360,540.00 of the $370,540 in cash disclosed by Defendant on November 6, 2009. The cash shall be turned over to the Court no later than noon on July 2, 2010; the monies held in financial accounts shall be turned over no later than noon on July 2, 2010. [¶] Defendant shall turn these assets over to the court appointed receiver (the Receiver), David J. Pasternak, Esq., who shall place them into one or more segregated and insured bank accounts. These assets may not be used or dispersed for any purpose by anyone, including the Receiver, without further order of this Court. Any interest accrued by these accounts shall be for the benefit of the account. These assets, in the form of cash and/or certified check made payable to 'David Pasternak, Receiver,' must be delivered to the offices of Pasternak, Pasternak & Patton, A Law Corporation, 1875 Century Park East, Suite 2200, Los Angeles, CA 90067-2523 no later than the time and date set forth in the preceding paragraph."

IV.

CONTEMPT PROCEEDINGS AGAINST NAZARZAI
AND ENTRY OF JUDGMENT OF CONTEMPT

After Nazarzai did not comply with the first turnover order, the Attorney General applied ex parte to the trial court for an order to show cause why Nazarzai should not be held in contempt. The court granted the Attorney General's application and ordered Nazarzai to appear to show cause why he should not be held in contempt of the following orders of the court: (1) the July 13, 2009 temporary restraining order, by failing to timely provide the required asset information and comply with the order freezing assets; (2) the October 2009 preliminary injunction, by failing to timely provide asset information; (3) the May 28, 2010 order granting the Attorney General's motion to compel, by failing to properly and completely respond to discovery; and (4) the first turnover order, by failing to turn over to the receiver, inter alia, $360,540 in cash.

The court held a trial on the contempt charge against Nazarzai. On December 7, 2010, the court issued its order and judgment on the contempt issue, which stated, inter alia, that the court "heard and considered the contemnor[']s evidence offered as an explanation for the conduct and rejected it because it is not credible. The contemnor's explanation would require me to find that a thief existed among one or more of the following persons: the good Samaritan who came to investigate Ms. Sheren's condition (witness David Legaspi); the paramedic, James August; Deputy James Gibson of the Los Angeles Sheriff's Department; employees of the towing Company who towed and stored the car in question and California Highway Patrol Officers Joe Dominguez and Toby Williams. [¶] I was able to observe and consider the demeanor of the witnesses described above and find them credible and do not believe any of them saw or took the black duffel bag containing the $360,540 in cash alleged to have been in the car. In fact, I find beyond a reasonable doubt that the cash was not in the car and never was placed into it for delivery to the Receiver. [¶] . . . After due consideration, I find, beyond a reasonable doubt that the contemnor is guilty of contempt of court in violation of the following subsection of section 1209(a) of the California Code of Civil Procedure: [¶] Subsection 5-Disobedience of any lawful judgment order or process of the court. [¶] . . . I further find, beyond a reasonable doubt that: [¶] (a) the contemnor had actual knowledge of my order, [¶] and [¶] (b) the contemnor had the ability to comply with my order, when it was given and continues to be able to comply with it, [¶] and [¶] (c) the contemnor has, and continues to, willfully disobey my order. [¶] . . . The contemnor is sentenced to pay a fine of $1,000.00 and to be confined in the County Jail until the contemnor performs the following act, or until the conclusion of the underlying proceeding: Turn over to the Receiver . . . $360,540.00 of the $370,540 in cash disclosed by the contemnor on November 6, 2009. This sentence shall run consecutive to the contemnor being sentenced to a separate 5 days in the county jail for his willful disobedience of my order to turn over the cash by noon of 07/02/2010. [¶] Execution of

6

the sentence of the Court is not stayed, and the contemnor is ordered to pay the fine and to be taken into custody forthwith." Nazarzai was taken into custody and remains in custody.

V.

THE TRIAL COURT FINDS DEFENDANTS LIABLE FOR VIOLATION OF THE UCL AND FAL; JUDGMENT IS ENTERED AGAINST DEFENDANTS.

At the March 2012 bench trial on the complaint, the Attorney General only prosecuted the first two of the five causes of action, for violations of the UCL and FAL. In its statement of decision, the trial court stated it found defendants' "boiler-room sales tactics . . . not only were likely to deceive members of the public, but were designed and intended to deceive members of the public." The court found that defendants violated the UCL and FAL and that "USHA took in $2,047,041.86 from consumers for its purported loan modification service."

The court found USHA, Sarpas, and Nazarzai jointly and severally liable for the full amount of restitution; Sheren was held to be jointly and severally liable for $147,869 of the full amount of restitution. The court also found USHA, Sarpas, and Nazarzai jointly and severally liable for civil penalties of $2,047,041, and defendants jointly and severally liable for an additional award in the amount of $360,540.

On July 23, 2012, judgment was entered, stating, inter alia, that defendants violated Business and Professions Code sections 17200 and 17500; that "each and every customer, client, or person . . . who paid a fee for loan modification services to USHA and/or WeBeatAllRates.Com during the period January 1, 2008 to July 14, 2009, will be contacted and offered full restitution of all funds paid by" them; and that "Defendants shall make complete and full restitution to each Eligible Consumer who requests same, up to a total of $2,047,041.86." The judgment also stated that USHA, Sarpas, and Nazarzai were jointly and severally liable to pay civil penalties in the amount of

7

$2,047,041 and that defendants were jointly and severally liable to pay additional civil penalties in the amount of $360,540.

VI.

WRIT OF EXECUTION OF MONEY JUDGMENT IS ISSUED; THE TRIAL COURT GRANTS THE
ATTORNEY GENERAL'S REQUEST FOR A SECOND TURNOVER ORDER;
NAZARZAI APPEALS FROM THE SECOND TURNOVER ORDER.

On December 7, 2012, the Attorney General obtained a writ of execution on the money judgment which, as it pertained to Nazarzai, was for $2,407,581 in civil penalties. The trial court denied Nazarzai's motion to be released from custody. The court explained that pursuant to the court's December 2010 order and judgment finding Nazarzai in contempt, inter alia, Nazarzai was to remain in jail until he turned over the funds required by the first turnover order or until the conclusion of the underlying proceeding.[3] The court stated the proceedings had not yet concluded because Nazarzai's codefendants had appealed from the judgment and their appeals were pending.

On the same date, the trial court also granted the Attorney General's application for a second turnover order (the second turnover order) modifying the first turnover order in light of the judgment entered and the writ of execution of the money judgment that had been issued, and ordered as follows: "Defendant Zulmai Nazarzai shall turn over to the Sheriff of Orange County, as Levying Officer, no later than 12 noon on January 2, 2013 the $360,540 in cash disclosed by Defendant on November 6, 2009. The receipt of these funds, as defined below, shall relieve Mr. Nazarzai of any further obligation to comply with the Court's previous Order of July 1, 2010 directing him to turn over these same funds to the Court. [¶] The funds may be provided in cash, certified check payable to the Attorney General of the State of California, or by any other means approved by the People." The court further ordered, "[o]nce the funds are received by

_____

[3] During the contempt trial in November 2010, the court explained to Nazarzai that under section 1219 of the Code of Civil Procedure, he was at risk of staying in jail until he complied with a turnover order.

8

the Sheriff, Mr. Nazarzai shall no longer be in contempt of the July 1, 2010 order, provided, however, if the funds are in any form other than cash, they will not be 'received' until the funds are collected, verified, and secured by the financial institution into which they are deposited by the People."

Nazarzai appealed from the second turnover order. The Attorney General filed a motion to strike portions of Nazarzai's reply brief, which we address *post*.

DISCUSSION

In this appeal, Nazarzai solely challenges the trial court's issuance of the second turnover order. Nazarzai's challenge is without merit. We apply general appellate principles, namely, that we presume the correctness of the trial court's order and Nazarzai must affirmatively show error. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.)

Section 699.040 of the Code of Civil Procedure provides that a judgment creditor may seek a turnover order from the court, following the issuance of a writ of execution, stating in its entirety: "(a) If a writ of execution is issued, the judgment creditor may apply to the court ex parte, or on noticed motion if the court so directs or a court rule so requires, for an order directing the judgment debtor to transfer to the levying officer either or both of the following: [¶] (1) Possession of the property sought to be levied upon if the property is sought to be levied upon by taking it into custody. [¶] (2) Possession of documentary evidence of title to property of or a debt owed to the judgment debtor that is sought to be levied upon. An order pursuant to this paragraph may be served when the property or debt is levied upon or thereafter. [¶] (b) The court may issue an order pursuant to this section upon a showing of need for the order. [¶] (c) The order shall be personally served on the judgment debtor and shall contain a notice to the judgment debtor that failure to comply with the order may subject the judgment debtor to arrest and punishment for contempt of court."

9

Nazarzai contends the trial court erred in issuing the second turnover order because there was no "showing of need for the turnover order," as required by Code of Civil Procedure section 669.040, subdivision (b). He argues the first turnover order is "identical" to the second turnover order. A comparison of the first turnover order with the second turnover order, however, shows they are not identical and that the latter order necessarily modified the former order in light of procedural developments in the case.

Specifically, the second turnover order directs Nazarzai to deliver the same amount of cash ($360,540), which is the subject of the first turnover order, to the Orange County Sheriff as the levying officer, in accordance with the issuance of the writ of execution of the money judgment. As judgment against defendants had been entered since the issuance of the first turnover order and collection efforts were already underway, the second turnover order directed Nazarzai to deliver the cash to the sheriff instead of the court-appointed receiver, whose services at this stage of the litigation were no longer necessary. The second turnover order expressly stated that the sheriff's receipt of those funds "shall relieve Mr. Nazarzai of any further obligation to comply" with the first turnover order. It further stated that, upon the sheriff's receipt of the funds, Nazarzai would no longer be in contempt of the first turnover order. As the second turnover order made necessary adjustments to the first turnover order in light of procedural developments in this case, there was a showing of need for it within the meaning of Code of Civil Procedure section 699.040, subdivision (b).

In an effort to show the absence of a need for the second turnover order, in his opening brief, Nazarzai quotes portions of the trial court's discussion with counsel during the hearing on the application for that order, in which the court expressed concern about whether there was a need for the second turnover order. "'Because we review the correctness of the order, and not the court's reasons, we will not consider the court's oral comments or use them to undermine the order ultimately entered. [Citations.] Here, where the trial court was not required to prepare a statement of decision or explain its

10

reasons for [issuing the second turnover order], it is especially important to refrain from using the court's oral comments as a basis for reversal. In that situation, reviewing the trial court's oral comments would in effect require the trial court either to prepare a statement of decision where none is required or to say nothing during argument to avoid creating grounds for impeaching the final order. We decline to place the trial courts in such an untenable position.'" (*Pellegrino v. Robert Half Internat., Inc.* (2010) 182 Cal.App.4th 278, 293-294.)

Nazarzai also contends the second turnover order "violates all principles of res judicata." (Boldface & capitalization omitted.) In his opening brief, Nazarzai states: "The granting of the [first] turnover order, still in effect to this date, was appealable. It is a final order to which the principles of res judicata apply. It was and is improper to re-litigate the issues presented by it and the second turnover order of 2012 was prohibited by the doctrine of res judicata."

Under the principles of res judicata or claim preclusion, a prior judgment bars a subsequent lawsuit on the same cause of action between the parties or their privies. (*Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 972-973.) Claim preclusion prevents relitigation of issues that were decided, or could have been litigated, in the prior lawsuit. (*Id.* at p. 975.) In contrast, the doctrine of collateral estoppel or issue preclusion bars relitigation only of the issues actually decided in the prior lawsuit. (*Mooney v. Caspari* (2006) 138 Cal.App.4th 704, 717.) Claim preclusion bars a subsequent lawsuit if three elements are established: (1) the prior lawsuit resulted in a final judgment on the merits; (2) the lawsuit sought to be barred is on the same cause of action as the prior lawsuit; and (3) the party against whom claim preclusion is sought was a party or in privity with a party to the prior lawsuit. (*Busick v. Workmen's Comp. Appeals Bd.*, *supra*, at p. 974.)

11

The first turnover order did not constitute a final judgment on the merits. The trial court's issuance of the second turnover order in the same action does not violate the principles of res judicata or collateral estoppel.

Nazarzai argues the second turnover order is erroneous because the cash that is the subject of the second turnover order constitutes intangible property that is not subject to levy within the meaning of Code of Civil Procedure section 699.040. Section 699.040 is part of the Enforcement of Judgments Law (Code Civ. Proc., §§ 680.010-724.260) which is "a comprehensive scheme governing the enforcement of all civil judgments in California." (*Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 546.) Section 699.040 does not distinguish between intangible and tangible property—it only refers to "property," which is defined in Code of Civil Procedure section 680.310 to include personal property. Tangible personal property is defined in Code of Civil Procedure section 680.370 to include "money." Furthermore, Code of Civil Procedure section 695.010, subdivision (a) provides: "Except as otherwise provided by law, *all property* of the judgment debtor is subject to enforcement of a money judgment" (italics added), and Code of Civil Procedure section 699.710 further provides: "Except as otherwise provided by law, all property that is subject to enforcement of a money judgment pursuant to Article 1 (commencing with Section 695.010) of Chapter 1 is subject to levy under a writ of execution to satisfy a money judgment."

Code of Civil Procedure section 699.720, subdivision (a) lists the "types of property" that are *not* subject to execution and that list does not include cash or currency.[4]

---

[4] Code of Civil Procedure section 699.720 provides in its entirety: "(a) The following types of property are not subject to execution: [¶] (1) An alcoholic beverage license that is transferable under Article 5 . . . . [¶] (2) The interest of a partner in a partnership or member in a limited liability company if the partnership or the limited liability company is not a judgment debtor. [¶] (3) A cause of action that is the subject of a pending action or special proceeding. [¶] (4) A judgment in favor of the judgment

12

(See Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2013) ¶ 6:317, p. 6D-4 (rev. # 1, 2011) ["Subject to important exceptions and qualifications noted below [(Code of Civil Procedure section 699.720, subdivisions (a) & (b))], all property of the judgment debtor subject to enforcement of a money judgment [citation], is subject to levy under writ of execution"].)

Nazarzai cites *Palacio Del Mar Homeowners Assn., Inc. v. McMahon* (2009) 174 Cal.App.4th 1386, in support of his argument that cash is not subject to levy under a writ of execution. *Palacio Del Mar Homeowners Assn., Inc. v. McMahon*, however, did not apply Code of Civil Procedure section 699.040, and did not hold that cash is excluded from levy pursuant to that statute.

In his reply brief, Nazarzai asserts, "[t]he People openly admitted at the time of the hearing on the motion for [the] second turnover order that the sole reason they sought the second turnover order was so they could seek a second, duplicative contempt should Mr. Nazarzai ever be released from custody on the first contempt" and that such a plan would unconstitutionally subject Nazarzai to double jeopardy.

The Attorney General has moved to strike portions of Nazarzai's reply brief, stating, "[i]n his reply, [Nazarzai] provides for the first time argument and citation in support of his position that double jeopardy barred the second order, even though double jeopardy concerns are irrelevant because the order itself is not a second prosecution. In doing so he unfairly deprives the People of an opportunity to refute his

debtor prior to the expiration of the time for appeal from the judgment or, if an appeal is filed, prior to the final determination of the appeal. [¶] (5) A debt (other than earnings) owing and unpaid by a public entity. [¶] (6) The loan value of an unmatured life insurance, endowment, or annuity policy. [¶] (7) A franchise granted by a public entity and all the rights and privileges of the franchise. [¶] (8) The interest of a trust beneficiary. [¶] (9) A contingent remainder, executory interest, or other interest in property that is not vested. [¶] (10) Property in a guardianship or conservatorship estate. [¶] (b) Nothing in subdivision (a) affects or limits the right of the judgment creditor to apply property to the satisfaction of a money judgment pursuant to any applicable procedure other than execution."

13

argument, in contradiction to well-established California law." We deny the Attorney General's motion because Nazarzai's double jeopardy argument is without merit.

Both the federal and state Constitutions prohibit placing a person in jeopardy twice for the same offense. (U.S. Const. 5th Amend.; Cal. Const., art. I, § 15.) The double jeopardy clause "protects only against the imposition of multiple *criminal* punishments for the same offense." (*Hudson v. United States* (1997) 522 U.S. 93, 99.)

Even were we to assume double jeopardy protections attach in this procedural context, the record does not reflect the trial court imposed multiple criminal punishments for the same offense. We therefore do not consider Nazarzai's double jeopardy argument further.


DISPOSITION

The postjudgment order is affirmed. The Attorney General shall recover costs on appeal.



FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


THOMPSON, J.

14