Filed 5/30/13  McElroy v. City of San Diego CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GUY McELROY et al., | D059562 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. Nos. 37-2009-00081178-CU-MC-CTL & 37-2009-00081659-CU-MC-CTL) |
| CITY OF SAN DIEGO, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed in part; reversed in part with directions.

Law Office of Michael A. Conger, Michael A. Conger; and Richard H. Benes for Plaintiffs and Appellants.

Jan I. Goldsmith, City Attorney, and Walter C. Chung, Deputy City Attorney for Defendant and Respondent.

The issues in this appeal are whether the trial court abused its discretion by substantially reducing the lodestar amount of plaintiffs' requested attorney fees under the private attorney general statute (Code Civ. Proc., § 1021.5)[1] without specifying which fees it found unreasonable and excessive, and without any support in the record; and erred by denying plaintiffs' request for other costs on the sole ground they did not submit the request on a Judicial Council form. We agree with plaintiffs on the latter issue, as the use of the Judicial Council form is not mandatory. We reverse the order to the extent it denies costs and direct the court on remand to consider the merits of the request. In all other respects, we affirm the judgment. Under California law, the court was not required to explain its ruling and, on this record, we cannot say the court abused its discretion by reducing the lodestar amount.

FACTUAL AND PROCEDURAL BACKGROUND[2]

I.      *Sloan Case/Canine Care Pay*

This court's January 2008 opinion in *Sloan v. City of San Diego* is relevant to the instant appeal. (*Sloan v. City of San Diego* (Jan. 29, 2008, D049158) [nonpub. opn.] (*Sloan*).) In *Sloan,* three City of San Diego police officers brought a declaratory relief action requiring the City of San Diego (the City) to include canine care pay in " 'Base Compensation' " for purposes of calculating their retirement benefits. Section 24.0103 of

_____

[1]     Further statutory references are also to the Code of Civil Procedure unless otherwise specified.

[2]     We deny plaintiffs' May 2, 2012, opposed request for judicial notice, on the grounds the information was not before the trial court and it is irrelevant to our decision.

2

the San Diego Municipal Code (SDMC section 24.0103) defined " 'Base Compensation' " as " 'base salary or wages paid,' " but it also referred to a document entitled the " 'Earnings Codes Document' " (ECD) as the source for a "complete listing" of pay classes included in Base Compensation. The City auditor's office annually prepared the ECD, which lists hundreds of pay classes for City employees, and divides pay classes into two categories, those " 'INCLUDED IN RETIREMENT BASE EARNINGS,' " and those " 'EXCLUDED IN RETIREMENT BASE EARNINGS.' "

At trial, the police officers produced evidence that the ECD listed " 'canine care pay' " in the category " 'INCLUDED IN RETIREMENT BASE EARNINGS' " for the years 2000 through 2005. During each of these years, several City officials reviewed the ECD and signed an acknowledgment that the pay items included in retirement base pay were correct. The City's payroll and accounts manager testified that historically canine care pay was included in retirement base pay, but he believed this was a mistake because such pay was considered overtime pay. The City introduced a copy of the parties' 2003 memorandum of understanding (MOU), a collective bargaining agreement. Although the MOU had expired, the parties continued to act under most of its provisions. One provision entitled " 'OVERTIME' " provided that " 'Employees assigned to the Canine Unit will be paid 3.5 additional hours of compensation each 40-hour work week at premium rate overtime.' "

The trial court found for the police officers on the ground the current and previous ECD expressly included canine care pay in retirement base pay. The court rejected the City's argument the inclusion was a mistake. The court entered a judgment stating that

3

SDMC section 24.0103 required the City to include canine care pay in " 'Base Compensation.' "

The City appealed, and we held the trial court "(1) properly determined [SDMC] section 24.0103 incorporates a document known as '[ECD]' to serve as the source for identifying the specific pay items included in retirement base compensation; and (2) properly found that canine care pay was included in retirement base compensation in the [ECD] from 2000 through 2005." We modified the judgment, however, to clarify its scope as follows: " '[The City] is required pursuant to [SDMC] section 24.0103 to include canine care pay in Base Compensation for purposes of calculating retirement benefits. This order applies only to canine care pay earned after July 1, 2000 and earned at a time when canine care pay was identified in an [ECD] as within the definition of Base Compensation.' " (*Sloan*, *supra*, D049158.)

II.     *Lopez Case/Motorcycle Care Pay*

*Lopez v. City of San Diego* (Super. Ct. San Diego County, 2007, No. GIC869054) (*Lopez*) was a companion superior court case to *Sloan,* pertaining to the inclusion of motorcycle care pay in police officers' base pay for purposes of retirement benefits. The court stayed *Lopez* pending the outcome in *Sloan* because the issues in the cases were identical.

III.    *Amendment of ECD*

After the trial court issued the ruling under review in *Sloan,* the City's assistant auditor prepared a new ECD, effective July 1, 2006, which expressly *excluded* canine care pay and motorcycle care pay from base compensation. This document contained a

4

footnote that stated the previous inclusion of these items in base compensation was a mistake. In January 2007 several City officials signed acknowledgments of the new ECD.

IV.    *Settlement in Sloan and Lopez Cases*

In June 2008 the *Sloan* and *Lopez* plaintiffs and the City entered into a settlement agreement for the adjustment of their pension benefits and those of other affected officers. The settlement agreement did not address the City's amended ECD.

V.    *Instant Consolidated Cases*

In January 2009 four San Diego police officers, Guy McElroy, David Cookson, Joseph Krouss and Scott A. Thompson (*McElroy* plaintiffs), filed a complaint against the City for declaratory relief. In September 2009 in response to the City's demurrer, the *McElroy* plaintiffs filed a first amended complaint (FAC). The FAC sought a "peremptory writ of mandate (a) voiding the City's unilateral amendment of the [ECD], (b) requiring the City to comply with the terms of its existing pension plan, and (c) to take all necessary steps to correctly report [the *McElroy*] plaintiffs' Base Compensation to the San Diego City Employees' Retirement System." The complaint alleged the amendment of the ECD was unlawful for a variety of reasons, including that it was contrary to our opinion in *Sloan*.

Also in January 2009 the San Diego Police Officers' Association (SDPOA), which represents police officers in labor-related matters, filed a complaint against the City. In September 2009 after the City's demurrer was sustained, the SDPOA filed a FAC against the City for a writ of mandate, seeking the same type of relief as the individual *McElroy*

5

plaintiffs. The FAC of the SDPOA alleged that by not meeting with the SDPOA before amending the ECD, the City violated the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.).

The *McElroy* plaintiffs and the SDPOA are represented by Michael Conger, the same attorney who represented the plaintiffs in *Sloan.* The *McElroy* plaintiffs and the SDPOA here successfully moved for the transfer of the two actions to superior court judge Judith F. Hayes, on the ground it would preserve court resources and plaintiffs' resources because she had handled the *Sloan* action and was familiar with the issues.

The court initially abated the *McElroy* case pending the outcome of the *SDPOA* case. In September 2009, however, the court lifted the stay. The City demurred to the FACs, and the court overruled the demurrers. In May 2010 the court consolidated the two cases for all purposes, and designated the *McElroy* case as the lead case. The court scheduled trial for August 27, 2010.

On August 4, 2010, the parties informed the court they had reached a settlement. On August 18, the court accepted the settlement agreement and dismissed the action without prejudice. Under the settlement, the City agreed the "Canine/Motor care pay will be included in base compensation for retirement purposes for officers who were in the unit between July 1, 2006 through June 30, 2010," but such pay "will not be added to base compensation for retirement purposes for any officers who enter into either unit after July 1, 2010."

Plaintiffs then moved for attorney fees under the private attorney general statute (§ 1021.5). Plaintiffs requested a lodestar amount of $231,590.58, which included: 201

6

hours for Michael A. Conger in the *McElroy* case, and 168.7 hours for him in the *SDPOA* case, all at a rate of $550 per hour, and 19.2 hours for attorney Richard H. Benes in the *McElroy* case, and 29.5 hours for him in the *SDPOA* case, all at a rate of $450 per hour. Plaintiffs requested a multiplier of 1.2 on the lodestar amount. In their fee motion, plaintiffs also requested $5,867.17 in out-of-pocket costs for Conger, and $473.41 in such costs for Benes. Plaintiffs later increased their requested lodestar amount to $249,585.58 to reflect fees incurred in replying to the City's opposition to their fee request.

In a tentative order, the court denied fees on the ground section 1021.5 was inapplicable. After a hearing, the court took the matter under submission. In a March 14, 2011 order, the court reversed its finding on section 1021.5's applicability and reduced the lodestar amount of fees to $75,000 on the ground the requested amount was unreasonable and excessive. The court denied plaintiffs an award of costs on the sole ground they did not file a Judicial Council form entitled "Memorandum of Costs."

DISCUSSION

I

*Amount of Attorney Fees Awarded Under Section 1021.5*[3]

A

"[E]ligibility for section 1021.5 attorney fees is established when '(1) plaintiffs' action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons" and (3) "the necessity and financial burden of private enforcement are such as to make the award appropriate." ' " (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214.)  When, as here, the *amount* of an attorney fees award under section 1021.5 is under consideration, we apply an abuse of discretion standard of review.  (*Id.* at p. 1213.)

"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."  (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.)  "The trial court is the best judge of the value of professional services rendered in its court, and while its judgment is subject to our review, we will not disturb that determination unless we are convinced that

---

[3]    The *McElroy* plaintiffs also requested attorney fees under Labor Code section 218.5, and the trial court found the statute inapplicable.  The *McElroy* plaintiffs concede it is unnecessary for us to reach that issue "because *entitlement* [to fees] under . . . section 1021.5 is undisputed," and "[o]ne statutory basis for attorney fees is sufficient." (Italics added.)

it is clearly wrong.  [Citations.]  The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination." (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134.)

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. 'California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.' "  (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) "Generally, the reasonable hourly rate used for the lodestar calculation 'is that prevailing in the community for similar work.' "  (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 616.)

B

Plaintiffs' principal contention is that the trial court had a sua sponte duty to specify the fees it disallowed, and the failure to comply with the duty constitutes prejudicial abuse of discretion.  Plaintiffs assert, "California law regarding the trial court's duty to explain its award of attorney fees is unclear, and therefore unsatisfactory." California law is well settled on the matter, however, and it is contrary to plaintiffs' position.

In *Maria P. v. Riles* (1987) 43 Cal.3d 1281, (*Maria P.*), the trial court's order granting attorney fees "contain[ed] certain findings, but [did] not contain findings on the factual issues of attorneys' hours or rates."  (*Id*. at p. 1294, fn. omitted.)  The California

9

Supreme Court rejected the contention the trial court was required to issue a statement of decision under section 632 to explain why it reduced the requested lodestar amount. (*Maria P.*, *supra*, at p. 1294.)

*California Common Cause v. Duffy* (1987) 200 Cal.App.3d 730, 754-755, explains: "In California, the trial court has no sua sponte duty to make specific factual findings explaining its calculation of the fee award and the appellate courts will infer all findings exist to support the trial court's determination. [Citations.] California courts have stated a disinclination to review the amount of an award when specific findings were not requested."

In *Ketchum v. Moses* (2001) 24 Cal.4th 1122 (*Ketchum*), the plaintiff complained that in awarding the defendant attorney fees the trial court "erred by failing to provide a 'reasoned explanation' for denying his objections to specific items in the billing records." (*Id.* at p. 1140.) Relying on *Maria P.*, *supra*, 43 Cal.3d 1281, the Supreme Court held the trial court was not required to issue a statement of decision regarding the fee award. The court also noted the defendant did not request a statement of decision, and, " ' "All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' [Citation.] As we explained in *Maria P.*: 'It is the burden of the party challenging the fee award on appeal to provide an adequate record to assess error." (*Ketchum*, *supra*, at pp. 1140-1141.)

In *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 63 (*Gorman*), the plaintiffs asserted that apart from section 632, trial courts must explain their reasoning in attorney fees rulings. The appellate court held to the contrary,

10

explaining: "We find no California case law analogue to section 632 requiring trial courts to explain their decisions on all motions for attorney fees and costs, or even requiring an express acknowledgment of the lodestar amount. The absence of an explanation of a ruling may make it more difficult for an appellate court to uphold it as reasonable, but we will not presume error based on such an omission. . . . In the absence of evidence to the contrary, we presume that the trial court considered the relevant factors." (*Gorman*, *supra*, at p. 67.) *Gorman* added, "When confronted with hundreds of pages of legal bills, trial courts are not required to identify each charge they find to be reasonable or unreasonable, necessary or unnecessary." (*Id*., at p. 101; see also *Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 625 ["Nor is there any merit to defendant's contention that it was incumbent upon the trial court to specify each and every item in defendant's memorandum with which the court found fault. This would be inconsistent with the well-established rule . . . that the trial court is entitled to take all of the circumstances into account and is not bound by the itemization claimed in the attorney's affidavit"].)

Accordingly, the trial court's order here is not subject to reversal for lack of specificity. Notably, the record reveals that in a motion for attorney fees in the *Sloan* case, Conger acknowledged the "Supreme Court has discouraged trial courts, in setting an attorney's fee, from becoming enmeshed in a meticulous analysis of every detailed facet of the professional representation." Moreover, as was the case in *Ketchum, supra,*

11

24 Cal.4th at page 1140, plaintiffs here did not request specific findings, and thus we indulge all intendments and presumptions in favor of the award.[4]

Plaintiffs' reliance on *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794 (*Dunk*), is misplaced. *Dunk* reversed an order awarding attorney fees because the record did not reveal whether the trial court applied the lodestar method or the "common fund approach." (*Id.* at p. 1809.) *Dunk* explained, "Because use of the common fund approach is improper in this case, the record does not reflect the presentation of information sufficient to properly apply the lodestar approach, and we are unable to determine how the trial court calculated the fees, the matter must be remanded." (*Id.* at p. 1810.) In *Dunk,* there were no billing statements or other evidence "in the record showing even an approximation of the hours actually spent." (*Ibid.*)

Here, there is no issue as to the use of the lodestar method. *Dunk*, *supra,* 48 Cal.App.4th 1794 actually undermines plaintiffs' position, as it rejected the argument the trial court was required to make formal findings on its calculation of fees in the absence of a request. (*Id.* at p. 1807, citing *Citizens Against Rent Control v. City of Berkeley* (1986) 181 Cal.App.3d 213, 233; *Rebney v. Wells Fargo Bank* (1991) 232 Cal.App.3d 1344, 1349 (*Rebney*).) *Rebney* explained that the "record need only show that the attorney fees were awarded according to the 'lodestar' . . . approach. [¶] . . . The court

---

4      Plaintiffs assert that without the requirement of a specific explanation for a fee award, the trial court here could have awarded them $1 million even though they requested $249,585.58 and a multiplier of 1.2, and in that event "the City would have a different perspective of the rule it is advocating."  As discussed below, however, an award must have a reasonable basis in the record.

was not required to explain which of counsel's hours were disallowed, or how or whether any hours were apportioned. On appeal, we must infer all findings on these points in favor of the prevailing parties." (*Rebney*, *supra*, at p. 1349.)

Plaintiffs urge us to "articulate, adopt, and apply a rule of California common law equivalent to federal law," which requires federal district courts to explain their fee awards with particularity. California courts, however, have explicitly departed from federal law in this regard. (See, e.g., *Gorman*, *supra*, 178 Cal.App.4th at pp. 66-67; *Californians for Responsible Toxics Management v. Kizer* (1989) 211 Cal.App.3d 961, 970.)[5]

## C

In a related vein, plaintiffs contend that under the authority of *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 63 Cal.App.4th 550 (*Premier*), the trial court's reduction of the requested lodestar amount here by substantially more than the 27.8 attorney hours specifically objected to by the City, without prior notice and a second hearing, violated their constitutional due process rights. We disagree.

*Premier* explains: "In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General

---

[5] While under California Supreme Court precedent trial courts are not obligated to reveal their calculations or reasoning on fee awards, doing so would obviously be of great assistance to appellate courts in reviewing awards for abuse of discretion.

arguments that fees claimed are excessive, duplicative, or unrelated do not suffice. Failure to raise specific challenges in the trial court *forfeits the claim on appeal*." (*Premier*, *supra*, 163 Cal.App.4th at p. 564, italics added; see also, *Gorman*, *supra*, 178 Cal.App.4th at p. 101 ["The party opposing the fee award can be expected to identify the particular charges it considers objectionable"].)

The City objected to plaintiffs' requested lodestar amount as generally excessive given the scope of work and identity of issues in the *McElroy* and *SDPOA* cases. The City reminded the court that "no substantial law and motion or discovery was done," and "the only law and motion that took place . . . were two demurrers and [the] City prevailed on the first set of demurrers. Under the lodestar approach, a base amount is calculated from a compilation of time reasonably spent." The City also argued, "Mr. Conger appears to unscrupulously attempt to double dip on his claimed fees via the fact that he filed two different actions [*McElroy* and *SDPOA* cases] even though the cases were identical. In fact, a great majority of the description and amount of time spent are identical in the billings of these two cases." The City cited *as an example*, 27.8 hours Conger billed on a few tasks. For instance, the City advised the court that he billed the *SDPOA* case for time spent opposing the City's request for judicial review, when the City made no such request in that case.

It behooves the opposing party to be specific, of course, to protect appellate rights. The City, however, has not appealed the fee order and there is no issue of forfeiture. *Premier*, *supra*, 163 Cal.App.4th 550, does not stand for the proposition a trial court cannot consider general objections in an opposition without giving prior notice.

14

Moreover, regardless of the state of the City's opposition, it was but one factor for the court's consideration. "It is the essence of arbitrariness to make an award of attorney fees that cannot be justified by the plaintiffs' request, the supporting bills, *or* the defendant's opposition." (*Gorman*, *supra*, 178 Cal.App.4th at p. 101, italics added.) As with any fee motion, the court was tasked with reviewing plaintiffs' supporting evidence and applying its knowledge of the case to determine whether the hours claimed were " 'reasonably expended.' " (*Ketchum*, *supra*, 24 Cal.4th at p. 1134.)

" 'Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." ' " (*Flores v. Kmart Corp.* (2012) 202 Cal.App.4th 1316, 1329.) As discussed, it is well established that a trial court has no sua sponte duty to explain the specifics of an attorney fees award issued after a hearing on a fee motion. Thus, it surely has no sua sponte duty to give prior notice of the specifics of an award before issuing it. Plaintiffs' due process theory is a permutation of their unsuccessful argument the trial court was required to specify the billing entries it found unreasonable or excessive.

Plaintiffs' reliance on *Moore v. California Minerals Products Corp.* (1953) 115 Cal.App.2d 834, 837, is misplaced as it held the trial court was required to give notice and the opportunity to be heard when the court sua sponte unearthed a *point of law* dispositive of the case. *Robert G. Beloud, Inc. v. Workers' Comp. Appeals Bd.* (1975) 50 Cal.App.3d 729 (*Beloud*), is also unhelpful. *Beloud* held, "Petitioner is correct . . . in

15

contending that the Board exceeds its authority when, *on reconsideration*, it modifies the amount of attorney fees allowed by the judge without affording the affected attorney notice and an opportunity to be heard." (*Id.* at p. 734, italics added.) Plaintiffs ignore the "on reconsideration" language in *Beloud*. Here, plaintiffs did not request reconsideration and there was no modification of the court's order.

D

Further, plaintiffs contend the lack of a specific explanation for the court's ruling precludes us from determining whether there was any abuse of discretion. It is true that the lack of *any* explanation for a trial court's substantial reduction of the requested lodestar amount may undermine the appellate court's confidence in the ruling. *Gorman*, *supra*, 178 Cal.App.4th 44, is illustrative. In *Gorman,* the requested lodestar amount was $684,003.75, and without any explanation the trial court reduced the fees to $416,581.37. The appellate court, noting the trial court's precision suggested the award was the product of an unknown mathematical computation, reversed the order and remanded the matter for another hearing. (*Id.* at pp. 99, 102.)

The *Gorman* court explained: "We might be able to conclude that the trial court was acting within its considerable discretion to award reasonable attorney fees if the court had given any . . . reason[] or cited any factor recognized in case law for reducing the lodestar amount. However, after much puzzlement and frustration, we have been unable to surmise any mathematical or logical explanation for the trial court's award of $416,581.37. Instead, the number appears to have been snatched whimsically from thin air. It is the essence of arbitrariness to make an award of attorney fees that cannot be

16

justified by the plaintiffs' request, the supporting bills, or the defendant's opposition.  We are unable to ascertain a reasonable basis for the trial court's reduction of the lodestar amount."  (*Gorman*, *supra*, 178 Cal.App.4th at p. 101.)  "A trial court's award of attorney fees must be able to be rationalized to be affirmed on appeal."  (*Ibid.*)

In contrast to *Gorman,* however, here the trial court's rationale is scrutable.  Its order states, "[T]he Court finds plaintiff's [*sic*] requested fees are *excessive and unreasonable*.  This is especially true in light of the fact that the action required minimal motion practice and was resolved by settlement.  The hours claimed are high considering counsel's skill and expertise.  The Court denies the application of a multiplier."  (Italics added.)

We conclude the record supports the court's ruling.  Conger sought and received a transfer of this action to superior court judge Judith Hayes, who also heard the *Sloan* case, on the ground the cases were related.  Conger argued, "Judge Hayes had extensive involvement in *Sloan* . . . , including reviewing and approving a settlement agreement in [*Sloan*] after the Court of Appeal decision in *Sloan*," and thus assignment to her "will certainly preserve judicial resources" and "may also preserve party resources as well, because less briefing will be involved in educating the Court regarding the facts and circumstances of the case, the law involved, and the nature of the claims."

Despite this prediction, plaintiffs here requested a *higher* number of attorney hours than the plaintiffs in *Sloan*:  418.4 hours versus 402.6 hours.  In *Sloan,* the litigation spanned three years, including trial on the merits and an appeal.  The *Sloan* plaintiffs

argued Conger undertook a "factual investigation, conducting all forms of discovery, client communications, and oral advocacy at all court hearings."

Here, the duration of the case was roughly half that of *Sloan.* Further, in contrast to the scope of work in *Sloan,* here there was no trial or appeal on the merits. The City demurred to the original complaints, and plaintiffs opposed only the demurrer in the *SDPOA* case, because the *McElroy* case was temporarily abated. Plaintiffs also opposed the City's demurrers to the FAC's in both the *McElroy* and *SDPOA* cases, but as the court noted, "the issues in both cases are literally identical." [Capitalization omitted.] To a significant extent plaintiffs' memorandum of points and authorities in both cases are repetitive.

Plaintiffs point out that they commenced discovery before the settlement, by deposing three City employees. Plaintiffs' citations to Conger's billing records show he spent a total of only 8.3 hours in preparing for and taking the three depositions. Plaintiffs do not claim they undertook any written discovery or filed any substantive motions.

Moreover, the court could reasonably find Conger's separate billing statements in the *McElroy* and *SDPOA* cases contained irregularities. For instance, Conger billed 15.9 hours for researching and drafting the FAC in the *SDPOA* case, and 10.4 hours for researching and drafting the FAC in the *McElroy* case. On a single day, he billed both cases a total of 13.2 hours on the FAC's.

The FAC's, however, are largely identical to the original complaints. The court sustained the City's demurrer to the original complaint in the *SDPOA* action on the ground that it claimed monetary damages, and thus was required to plead compliance

18

with the Government Claims Act (Gov. Code, § 810 et seq.). The FAC in the *SDPOA* case consisted of only four pages, compared to seven pages for the original complaint, and it merely deleted allegations relating to monetary damages. The *McElroy* plaintiffs filed their FAC in response to the City's demurrer, also based on the Government Claims Act, without a hearing on the matter. The FAC consists of seven pages, whereas the original complaint was five pages, but the pleadings contain many of the same allegations.

Further, on December 10, 2009, Conger billed the *McElroy* and *SDPOA* cases each 2.1 hours, for a total of 4.2 hours, to prepare for and attend an ex parte hearing to continue the trial date.[6] The City applied for the continuance and submitted written documents. Conger's billings do not indicate he opposed a continuance or prepared any written response.

Additionally, on April 16, 2010, Conger billed the *McElroy* and *SDPOA* cases each six hours, for a total of 12 hours, for preparing for and attending a hearing on the City's demurrers to the FAC's. The hearing was held at 10:30 a.m., and thus, as the City points out, for the entries to be accurate, Conger "would have had to begin 'preparing' for the hearing at 12:01 a.m. on April 16, 2010 and continued to prepare without interruption for sleep, meals, etc. up until the actual time of the hearing."

---

[6] Conger denied double billing, advising the court that the *McElroy* plaintiffs and *SDPOA* agreed his "time for certain tasks . . . would be split in half, and one-half billed to each client."

Plaintiffs assert that since the City did not specifically object to Conger's December 10, 2009, and April 16, 2010 billing entries at the trial court, the City's reference to them on appeal is improper under the theory of the case doctrine. "As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried. This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal; and it also reflects principles of *estoppel* and *waiver*." (Eisenberg, et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2012) ¶ 8:229, p. 8-155.) Plaintiffs cite *Planned Protective Servs. v. Gorton* (1988) 200 Cal.App.3d 1, which applied the theory of the case doctrine to preclude a party from raising for the first time on appeal a *statutory* defense to an award of attorney fees under section 1021.7. (*Gorton*, *supra*, at pp. 12-13.)

The City does not raise a new statutory defense to an award of attorney fees under section 1021.5. Rather, the City merely comments on the evidence plaintiffs presented in support of their fee award. With or without any input from the City, our task is to review plaintiffs' evidence to determine whether it supports the court's ruling. (Cal. Rules of Court, rule 8.220(a)(2).)[7] We conclude the theory of the case doctrine is inapplicable.

Given such examples, the court may have rejected Conger's assertion he split his time evenly between the *McElroy* and *SDPOA* actions, and find instead that he engaged

---

[7]     Further rule references are also to the California Rules of Court. When a respondent's brief is not filed, we "may decide the appeal on the record, the opening brief, and any oral argument by the appellant." (Rule 8.220(a)(2).)

in double billing.  While a requested lodestar amount is ordinarily considered accurate, as plaintiffs claim, the evidence may belie such a presumption.  (See *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 416; *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 622.)  "[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous."  (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 396.)  Here, the court expressly found plaintiffs' attorneys billed an unjustified amount of time on the case given the identity of issues, the scope of motion practice, and their skill levels.

"[A]bsent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*" in litigating the action to a successful conclusion.  (*Ketchum, supra,* 24 Cal.4th at p. 1133.)  "Reasonably spent" means that time spent "in the form of inefficient or duplicative efforts is not subject to compensation."  (*Id.* at p. 1132.)  "A reduced award might be fully justified by a *general observation* that an attorney overlitigated a case or submitted a padded bill or that the opposing party has stated valid objectives."  (*Gorman, supra,* 178 Cal.App.4th at p. 101, italics added.)  " '[P]adding' in the form of inefficient or duplicative efforts is not subject to compensation."  (*Ketchum*, *supra*, 24 Cal.4th a p. 1132.)  "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether."  (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 635.)

Under all the circumstances, we find no abuse of discretion.  "The 'experienced trial judge is the best judge of the value of professional services rendered in his [or her]

21

court.' " (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49; accord, *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 752.) The award in this case is not so small as to shock the conscience, and thus we do not disturb it. (*11382 Beach Partnership v. Libaw* (1999) 70 Cal.App.4th 212, 220.)

E

Additionally, plaintiffs criticize the City for "never offer[ing] any evidence of the aggregate amount of time spent by the *defense* teams on the consolidated cases." Plaintiffs assert "[i]t can and should reasonably be inferred that, if the combined lodestar figure of the plaintiffs' attorneys was grossly disproportionate to the combined lodestar figure of the defense attorneys, the City would have offered such evidence."

Plaintiffs cite *Stastny v. Southern Bell Tel. & Tel. Co.* (W.D.N.C. 1978) 77 F.R.D. 662, 663-664 (*Stastny*), which held the opposing party's legal expenses were relevant in considering the prevailing party's request for fees. *Stastny* explains: "In a contest over what time was reasonably and necessarily spent in the preparation of a case, it is obvious that the time that the opposition found necessary to prepare its case would be probative. Each party must prepare to question the same witnesses, must review the same documents and other evidence, and must anticipate a presentation by the opposition of a complexity related to the facts in issue. Similarly, work on pretrial motions would reflect what volume of work opposing attorneys deemed reasonable."

The issue in *Stastny*, however, was whether the prevailing plaintiff was entitled to discovery of the amount the defense spent on attorney fees, including the name and number of hours worked by each defense attorney. The defense objected to producing

22

the information on the grounds of attorney-client privilege and irrelevancy, and the court overruled the objection. (*Stastny, supra,* 77 F.R.D. at p. 663.) *Stastny* does not suggest that the party opposing a fee motion has any duty to submit evidence of its own fees without a demand for production, and plaintiffs here do not assert they made any demand. Plaintiffs' assertion "the total defense lodestar cannot be known" is attributable to their inaction. The City was not required to voluntarily produce the evidence, and no inference arises from nonproduction.

## II

### *Costs*

Additionally, plaintiffs contend the trial court erred by denying their request for costs on the sole ground they did not submit the request on a Judicial Council form, and rather presented it in conjunction with their fee request, accompanied by attorney declarations. The City concedes the point, and we agree.

Under rule 3.1700(a), a prevailing party seeking costs "must serve and file a memorandum of costs within 15 days after . . . the date of service of written notice of entry of judgment or dismissal, or within 180 days after entry of judgment, whichever is first. The memorandum of costs must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case."

Government Code section 68511 provides: "The Judicial Council may prescribe by rule the form and content of forms used in the courts of this state. When any such form has been so prescribed by the Judicial Council, no court may use a different form

23

which has as its aim the same function as that for which the Judicial Council's prescribed form is designed."

Rule 1.31(a) provides: "Forms adopted by the Judicial Council for mandatory use are forms prescribed under Government Code section 68511. Wherever applicable, they must be used by all parties and must be accepted for filing by all courts." Rule 1.31(b) instructs that "[e]ach mandatory Judicial Council form is identified as mandatory by an asterisk (*) on the list of Judicial Council forms in Appendix A to the California Rules of Court." Appendix A does *not* list the Judicial Council's Form. No. MC-010, entitled Memorandum of Costs, as a mandatory form. According to Witkin, Form No. MC-010 is one of the "optional forms" the "Judicial Council has adopted . . . to assist courts and parties with the procedural requirements necessary to recover costs." (7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 139, p. 675.)

The City asserts plaintiffs are not entitled to costs because they did not request them within the 15-day period. (Rule 3.1700(a).) Plaintiffs argue the 15-day period is inapplicable because no written notice of entry of judgment was served on them, and they requested fees within the 180-day period. (*Ibid.*) The City has not cited the record to show otherwise. The City suggests the 15-day period applies because plaintiffs had actual notice of dismissal, but we deem the argument forfeited because they do not develop any particular argument or cite any supporting authority.

24

DISPOSITION

We reverse that portion of the order denying the plaintiffs' request for costs, and direct the court on remand to consider the merits of the request.  In all other respects, we affirm the judgment.  The parties are to bear their own costs on appeal.


McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


HALLER, J.